216 So.2d 209 (1968)
Doyle CONNER, As Commissioner of Agriculture, Appellant,
v.
JOE HATTON, INC., a Florida Corporation, Appellee.
No. 37574.
Supreme Court of Florida.
November 20, 1968.
Rehearing Denied December 23, 1968.
*210 Earl Faircloth, Atty. Gen., R.O. Chastain, Asst. Atty. Gen., Jack Shoemaker, Resident Atty. Dept. of Agriculture, Thomas H. Johnson, State Atty., M.W. Wells and Raymer F. Maguire, Jr., Orlando, Sp. Counsel for Dept. of Agriculture, for appellant.
Wilfred C. Varn, of Ervin, Pennington, Varn & Jacobs, Tallahassee, for appellee.
ROBERTS, Justice.
The question on this appeal is the validity of Sections 573.17(3) and 573.21(1), Florida Statutes. The question arose in a suit filed by the appellant, as Commissioner of Agriculture of the State of Florida, to collect an assessment made against the appellee under the authority of Section 573.21(1) to pay the cost of administering a Sweet Corn Marketing Order promulgated by the Commissioner pursuant to Section 573.17(3). The appellee's defense to the suit was the unconstitutionality of the enabling Act, Section 573.17(3), on various grounds, including a charge that the Act showed on its face that it constituted an unlawful delegation of legislative power. The trial judge agreed and entered a summary judgment in favor of the appellee. This appeal by the Commissioner of Agriculture followed. Jurisdiction attaches under Section 4(2), Article V, of the Florida Constitution, F.S.A.
In the summary judgment here reviewed the trial judge noted that the Act authorizes the Commissioner to include in a marketing order provisions for (1) grading, inspecting and regulating marketing practices in the sweet corn industry; (2) establishment of plans and programs for advertising and sales promotion to maintain present markets or to create new or larger markets; (3) removal of trade barriers; (4) promoting the sale of sweet corn; (5) prohibition of unfair trade practices; and (6) carrying on research studies in the production and distribution of sweet corn and for the *211 expenditure of money for such purposes. He found that the language of the statute in the six areas enumerated was too broad and, in effect delegated to the Commissioner an unrestricted discretion in applying the law; that the Legislature "did not sufficiently describe the limits of delegation of legislative authority, and therefore, those Sections of 573.17 which authorize such activities are unconstitutional." He found, also, that since the enabling sections were unconstitutional, there was no need for the assessment provisions of Section 573.21(1). Accordingly, that section was also struck down.
The provisions of Section 573.17 relating to the six areas of regulatory activity referred to above and stricken down by the trial judge comprise Subsection (3) of the Section. Therefore, the question before us is the constitutionality vel non of Section 573.17(3), Florida Statutes. It might be noted that Sections 573.17(1) (d) and 573.17(2) (d), applicable to celery and sweet corn, respectively, authorizing the Commissioner to allot to each producer the quota of the product that might be placed in the primary channel of trade by him during the current season, have been held to be unconstitutional as a denial of equal protection of the law. See Rabin v. Conner, Fla. 1965, 174 So.2d 721, as to celery; and a final decree of the Circuit Court of Leon County entered May 25, 1965, in the case of Pope v. Conner, under the authority of the Rabin decision, as to sweet corn.
Here, as noted, the question of the validity of Section 573.17(3) was decided on the basis of an unlawful delegation of legislative power. Our concern is, therefore, with the principles of law respecting that aspect of constitutional law. The rules for the guidance of the courts in deciding the question of unlawful delegation of legislative power have been many times stated. Most often quoted is the principle laid down by Mr. Justice Whitfield in State v. Atlantic Coast Line Railway Co., 1908, 56 Fla. 617, 47 So. 969, 32 L.R.A.,N.S., 639, as follows: 
"The Legislature may not delegate the power to enact a law or to declare what the law shall be, or to exercise an unrestricted discretion in applying a law; but it may enact a law, complete in itself, designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose." 47 So. at p. 976.
The fact that some authority, discretion or judgment is necessarily required to be exercised in carrying out a purely administrative or ministerial duty imposed by statute does not invalidate the statute. Such authority, discretion, or judgment is subject to judicial review and is not deemed to be a non-delegable legislative power. Bailey v. Van Pelt, 1919, 78 Fla. 337, 82 So. 789, 793. It has been said that the true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to what the law shall be, and the conferring of authority or discretion in executing the law pursuant to and within the confines of the law itself. See Ex Parte Lewis, 1931, 101 Fla. 624, 135 So. 147, 151, quoting with approval Hampton, Jr. & Co. v. United States, 276 U.S. 394, 400, 48 S.Ct. 348, 351, 72 L.Ed. 624.
When the statute is couched in vague and uncertain terms or is so broad in scope that no one can say with certainty, from the terms of the law itself, what would be deemed an infringement of the law, it must be held unconstitutional as attempting to grant to the administrative body the power to say what the law shall be. See State ex rel. Davis v. Fowler, 1927, 94 Fla. 752, 114 So. 435, 437; and Lewis v. Florida State Board of Health, Fla.App. 1962, 143 So.2d 867, 875. As stated in 1 Fla.Jur., Administrative Law, at page 243,
"A law must be complete in itself, in all its terms and provisions when it leaves the legislative branch of government, so that by appropriate judicial review and *212 control any action taken pursuant to such delegated authority may be kept within the defined limits of the authority conferred and within the express and implied limitations of all controlling provisions and principles of dominant law, and it is not left to an administrative authority to decide what should and what should not be deemed infringement of the law." (Emphasis added.)
The subject matter of a statute may, however, be such that only a general scheme or policy can be laid down by the Legislature, and the details of the legislative policy can best be handled at the administrative level. See State ex rel. Young v. Duval County, 1918, 76 Fla. 180, 79 So. 692, 697. The establishment of grades or standards of quality for fruits and vegetables appears to be especially suitable for determination by an administrative body. And the validity of such statutes has been upheld in various situations, as against a contention that they constituted an unlawful delegation of legislative authority. See Mayo v. Bossenbury, 1942, 152 Fla. 16, 10 So.2d 725 (reasonable grades and/or standards of quality for eggs); Mayo v. Texas Co., 1939, 137 Fla. 218, 188 So. 206 (standards and specifications of oils and gases); Hutchins v. Mayo, 1940, 143 Fla. 707, 197 So. 495, 133 A.L.R. 394 (grading and labeling of citrus fruits).
We have the view, therefore, that the provision authorizing the Commissioner to include in a marketing order provisions establishing grading standards of quality, condition, size, maturity or pack, designated Subsection (3) (a) 1 of Section 573.17, delineates the Commissioner's authority in this area sufficiently that any excursion beyond the scope of the administrative authority would be immediately and clearly apparent and subject to judicial review and correction.
The provision authorizing the promulgation of rules and regulations for the "uniform inspection, grading of and proper labeling of celery or sweet corn, in accordance with the standards so established", designated Subsection (3) (a) 2 of Section 573.17, is in the same category as its predecessor subsection and is limited thereby. In Johnson v. State ex rel. Maxcy, 1930, 99 Fla. 1311, 128 So. 853, this court upheld the inspection provisions of an Act (Ch. 10103, Laws of Florida, Acts of 1925) to protect the sale or transportation of citrus fruit that is immature or otherwise unfit for consumption, stating that the inspection provision
"* * * was merely a measure deemed to be wise in legislative thought to facilitate the execution of the purpose sought to be accomplished by chapter 10103, supra, as amended."
There is clearly no delegation of legislative authority here. Accordingly, the validity of Section 573.17(3) (a) 2 must be upheld.
The third aspect of this subsection, designated Subsection 3(a) 3 of Section 573.17, has the same characteristics as Subsection 3(a) 1, above. It authorizes the Commissioner to
"* * * fix the type, specifications, size, weight, capacity, dimensions or pack of the containers which may be used in the packaging, transportation, sale, shipment, or other handling of celery or sweet corn."
Surely this is a matter that may properly be left to the discretion of the administrative officer within the limits clearly defined by the statute. We find no unlawful delegation of legislative power here.
The next subsection, Subsection (3) (b) of Section 573.17, contains the provisions referred to in the judgment here reviewed as "(2) establishment of plans and programs for advertising and sales promotion to maintain present markets or to create new or larger markets;" and "(3) removal of trade barriers"; and "(4) promoting the sale of celery or sweet corn".
We have no difficulty in concluding that advertising and sales promotion have such a fixed and definite meaning in connection *213 with the promotion of the fruit and vegetable industry in this state that the limitations upon what may be done in this respect are as clearly defined as though set out verbatim in the statute. Statutes authorizing advertising programs for various purposes are not uncommon. As stated in C.V. Floyd Fruit Co. v. Florida Citrus Commission, 1937, 128 Fla. 565, 175 So. 248, 112 A.L.R. 562.
"We are committed to the theory that advertising is a proper method for promoting the public welfare and that, therefore, the tax levied to provide funds for advertising serves a public end."
We are not so sanguine, however, as to the authorization of programs "for the prevention, modification or removal of trade barriers which obstruct the free flow of celery or sweet corn to market." We are not directed to any decisions upholding such a delegation of authority; nor is it suggested what standards, either by common usage or by reference to the purposes of the Act, can be implied in limiting the Commissioner's authority in this respect. We must agree with the trial judge that this particular aspect of the statute constitutes an unlawful delegation of authority.
Similarly, the authorization to prohibit "unfair trade practices" is subject to the same infirmity. In Robbins v. Webb's Cut Rate Drug Co., 1944, 153 Fla. 822, 16 So.2d 121, in considering whether a similar authorization respecting "unfair or unreasonable economic practices among barbers or barber shops" was an unconstitutional delegation of legislative authority, this court pointed out that these terms
"* * * have no set meaning in law or in common usage. To vest in a Commission the unbridled discretion to define such terms without any rule or standard whatever to guide them is a clear delegation to enact the law or define what it shall be; in other words, a delegation of straight legislative power which will not be permitted."
It must be held, therefore, that the provision of Subsection 3(c) of Section 573.17, relating to unfair trade practices, is too vague and uncertain, as presently framed, to support a delegation of administrative authority to the Commissioner.
Finally, Subsection 3(d) authorizes the Commissioner to provide for "carrying on research studies in the production or distribution of celery or sweet corn and for the expenditure of moneys for such purposes." Here, again, research in connection with agricultural products, as well as in countless other areas of our economic life, is so common-place as to have acquired a well-defined meaning. We do not construe the statute as delegating to the Commissioner an "unbridled discretion" in the area of research. The Legislature apparently believed that the Commissioner, together with the advisory council, would be in a much better position to determine the research programs which, from time to time, should be inaugurated. We consider this to be a ministerial discretion and not a non-delegable legislative discretion. Accordingly, Section 573.17(3) (d) must be upheld.
Some contention is made on behalf of the appellee that, even though Section 573.17(3), or portions thereof, might be held not to be susceptible to the charge of an unlawful delegation of legislative authority, it should be stricken down as an unlawful exercise of the police power. We do not agree. This court can take judicial notice of the fact that the vegetable industry has reached a position of great economic importance in this state. What this court said in 1930 concerning the citrus industry might well be repeated in 1968 concerning the vegetable industry: 
"The protection of a large industry constituting one of the great sources of the state's wealth and therefore directly or indirectly affecting the welfare of so great a portion of the population of the state is affected to such an extent by public interest as to be within the police *214 power of the sovereign." Johnson v. State ex rel. Maxcy, 99 Fla. 1311, 128 So. 853.
In summary, then, we hold that the following provisions of Section 573.17(3) are valid: Sections 573.17(3) (a); 573.17(3) (b) insofar as it relates to the establishment of plans and programs for advertising and sales promotion; and Section 573.17(3) (d). For the reasons stated, we hold that Section 573.17(3) (c), and that portion of Section 573.17(3) (b) providing for the "prevention, modification or removal of trade barriers" are invalid as an unconstitutional delegation of legislative power.
Since the assessment provisions of Section 573.21(1) are still necessary to provide the funds for the expense of administering a Sweet Corn Marketing Order that may be adopted to carry out the valid provisions of the Act, the judgment striking it down should be reversed.
No opinion is expressed as to the validity of the Marketing Order as a proper exercise of the administrative power conferred upon the Commissioner, nor as to the validity of the Act in its application to the appellee and others similarly situated. We hold, only, that the provisions of the statute referred to above are not unconstitutional on their face as an unlawful delegation of legislative power or as an arbitrary exercise of the police power.
We have considered whether the valid provisions of the statute are separable from the invalid ones, or whether the entire section must fall with the invalid provisions, in the light of the fact that the statute contained a severability clause. We have concluded that the invalid provisions are separable from the valid ones; that the Legislative purposes may be accomplished independently of those declared to be invalid; that the valid and invalid provisions are not so inseparable in substance that it can be said that the Legislature would not have enacted one without the other; and that an Act complete in itself remains after the invalid provisions are stricken. See Cramp v. Board of Public Instruction of Orange County, Fla. 1962, 137 So.2d 828, 830, and cases cited.
Accordingly, the judgment here reviewed should be and it is hereby affirmed in part and reversed in part and the cause remanded for the entry of a judgment in accordance with the opinions herein expressed.
It is so ordered.
CALDWELL, C.J., DREW, THORNAL and HOPPING, JJ., and SPECTOR, District Court Judge, concur.